CHRISTINE MARIE ROTH, n/k/a Christine Marie Davies, Plaintiff-Appellant, v. ROBERT RUSSELL ROTH, Defendant-Appellee.—(MILTON J. ROSENTHAL, Guardian ad Litem, Appellant.)

First District (2nd Division)   Nos. 62641, 76-1024 cons.

Opinion filed August 30, 1977.

Davis, Jones & Baer, of Chicago (Joseph Winslow Baer, Phillip M. Citrin, and Sidney Z. Karasik, of counsel), for appellant Christine Marie Roth.

Milton J. Rosenthal, guardian ad litem, of Chicago, for appellant, *pro se.*

Arthur M. Berman and Francis X. Riley, both of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Christine M. Roth (now Mrs. John Davies), and the court appointed guardian ad litem appeal from the judgment of the circuit court in this post-decree divorce matter concerning child custody. After an evidentiary hearing on defendant's petition seeking sole custody of the couple's two minor children, the court ordered that custody of the two children remain jointly in the parties. The children were to reside with defendant during the nine months of the school year and with plaintiff during summer vacations and certain holidays. The court ordered defendant to pay fees of $3,500 to the guardian ad litem and denied plaintiff's petition for attorney's fees.

On appeal appellants contend (1) that the court's order granting joint custody was against the manifest weight of the evidence; and (2) that the court abused its discretion when it allegedly ignored the recommendations of its appointed guardian ad litem. Defendant cross-appeals contending that the court erred in ordering him to pay the fees of the guardian ad litem. Plaintiff's appeal in cause No. 76-1024 contending

that the court erred in denying her petition for attorney's fees has been consolidated with cause No. 62641.

Plaintiff and defendant were married on September 28, 1968. Two children were born of this marriage, Tracey Lynn on January 16, 1970, and Ryan Richard on August 5, 1972. On October 19, 1973, plaintiff was awarded a divorce from defendant in Cook County, Illinois, on grounds of physical cruelty. The divorce decree incorporated an agreement between plaintiff and defendant dated September 14, 1973. The pertinent part of that agreement which gave rise to the instant petition reads as follows:

> "3. Each of the parties hereto, namely Robert and Christine, have agreed that they shall have and retain joint custody of the parties minor children, namely Tracey and Ryan, subject to the following provision: (a) The physical custody of said children will be divided each year between the parties in six (6) month continuous terms, the first term of physical custody will be taken by Robert, said term to commence on the first day of the month following the entry of any decree of divorce herein and continuing for a period of six (6) continuous months; said children will then be delivered to Christine for the ensuing six (6) months to be returned by her to Robert following her six (6) month term and continuing until the oldest attains school age, at which time the parties will either agree upon a division of physical custody or the issue will be submitted to the Court for determination; both parties agree that the children's best interest should be the controlling factor * * *."

On October 7, 1974, plaintiff married John Davies and moved to his home in Toledo, Ohio. On October 18, 1974, defendant filed a petition in Cook County, Illinois, seeking sole custody of the children, claiming that plaintiff had remarried, moved to the State of Ohio, and had advised defendant that she would not return the children. Pursuant to defendant's request, the court appointed a guardian ad litem to represent the interests of the children. Subsequently plaintiff filed an answer and counterpetition also praying for sole custody of the children.

Evidentiary hearings commenced on June 3, 1975. At that time Tracey, the oldest child, had reached sufficient age to enter kindergarten in the fall of 1975. Numerous witnesses testified concerning the character, traits and habits of plaintiff and defendant. Plaintiff, 31 years of age at the time of the hearings, and her new husband (John Davies) were renting a two-bedroom townhouse in a new housing complex. She testified that she was employed as a registered nurse and as an anesthetist. Her new husband testified that he was a partner in an employee-benefit consulting firm.

Defendant, 59 years of age at the time of the hearings, has continued to live in the three-bedroom marital home in Kenilworth, Illinois. He

testified that he is a general surgeon with a five-day work week. At the time of the hearings he had employed two full-time governesses and three temporary people to help take care of the children during his periods of custody.

The guardian ad litem, Milton J. Rosenthal, a Chicago attorney, testified that with approval of both parties and their counsel, he arranged to visit plaintiff's home in Toledo, Ohio, on December 31, 1974. He found a neat and orderly home with "better-than-average furnishings." During the visit Ryan was asleep, but Tracey "cuddled up close to her mother." Plaintiff told Rosenthal that she did not work on the days when the children were visiting.

On January 2, 1975, Rosenthal arranged for an appointment with defendant on January 4, 1975, in defendant's Kenilworth home. At this visit with defendant, Rosenthal found the children happily playing with their Christmas toys in the "lavish, three-bedroom home with a basement and a playroom." Nonetheless, he expressed reservation and concern about the then governess who was concurrently caring for her own two children. Subsequently defendant hired a new governess, and Rosenthal paid a return visit on March 5, 1975. At this visit both children were in a playful mood. However, while Rosenthal was still present, plaintiff telephoned and spoke with Tracey. When defendant appeared to lose his temper over the telephone conversation, Rosenthal left. Rosenthal revisited the Kenilworth home on April 7, 1975, and met with the new governess but found the household in disarray. Defendant was not at home during this visit.

In closing argument Rosenthal told the court that "these children would be very lucky to have either the father or the mother in this case because I consider both of them well-qualified people to have the custody of a child, or children." Nonetheless, he felt that the children's interests would be better served by a stable authority figure than by changing governesses. Rosenthal recommended that sole custody be granted to plaintiff.

The court found both plaintiff and defendant to be fit and proper persons to have the care, custody and control of the children and chose to retain the original decree's provision for joint custody. Defendant was then granted custody during the school year, and plaintiff received custody during the summer vacation, Christmas week and spring vacation. Each party was to have two weekend visitations (6 p.m. Friday, to 6 p.m. Sunday) per month while the other party had custody. Plaintiff and the guardian ad litem appeal from this order.

Subsequently the court ordered defendant to "pay to Milton J. Rosenthal, as guardian ad litem, the sum of $3,500." Defendant cross-appeals from that order.

Plaintiff thereupon petitioned the court for an award of attorney's fees. Further hearings were had and when that petition was denied, plaintiff appealed. This court has consolidated the two appeals.

Appellants claim that the finding of the court below which denied plaintiff custody of her children was against the manifest weight of the evidence. Specifically they refer to *Nye v. Nye*, (1952), 411 Ill. 408, 414, 105 N.E.2d 300, in asserting that a child of tender years, especially a daughter, is generally entrusted to the care and custody of the mother. Moreover, they argue that the best interests of the children would be served by granting plaintiff sole custody, particularly in light of the testimony and recommendations of the court-appointed guardian ad litem.

The facts in the case at bar, however, are distinguishable from those in *Nye*. In *Nye* an agreement had been incorporated into the divorce decree reciting that it was for the best interests of the child that her custody alternate yearly between the parties, and that the party in custody agreed to occupy a particular house during the year of custody. Within one year after the entry of the divorce decree, plaintiff mother petitioned the court for a modification of the decree to allow her custody of the child without living in the specified house. Defendant father answered and counterpetitioned for a modification of the decree so that he might have sole custody of the child since the mother was now allegedly unfit. The lower court modified the custody provisions, found the mother unfit and awarded the father permanent custody, the mother to have custody during vacation periods from July 1 to August 15 of each year.

Recognizing the broad discretion of the court in determining which parent shall have custody of a child, our supreme court nonetheless found no change of circumstances to warrant the modification of the custody decree. Due to the tender years of the female child, the supreme court required compelling evidence that the mother was unfit or a positive showing that to deny her custody would be for the best interests of the child. The supreme court affirmed the decision of the appellate court to the effect that giving sole custody to the father was an abuse of discretion by the trial court.

Like *Nye*, the case at bar concerns the modification of a divorce decree which incorporated an agreement that father and mother alternate custody. Like *Nye*, one child is a minor daughter. However, unlike *Nye*, the agreement incorporated into the divorce decree in the instant case provided for a further agreed or court-ordered division of custody when the oldest child attained school age. Both Tracey and Ryan have now attained school age. When the parties could not agree on a further division of custody which would be for the best interests of the two minor children, they sought the aid of the court. We believe that the lower court

correctly found a change in circumstances to warrant a modification of the division of custody called for by the divorce decree.

■■ The continuing validity of the original decree is presumed in matters concerning custody of minor children until the moving party has shown why a change should be made. (*Garland v. Garland* (1st Dist. 1974), 19 Ill. App. 3d 951, 954, 312 N.E.2d 811.) In determining which parent is to be awarded custody of a child, the trial judge is clothed with broad discretion. (*Miezio v. Miezio* (1955), 6 Ill. 2d 469, 129 N.E.2d 20.) Nevertheless, the primary concern is the welfare and best interests of the minor children, and that concern keeps custody matters of such children at all times subject to court modification. *Girolamo v. Girolamo* (5th Dist. 1972), 5 Ill. App. 3d 627, 283 N.E.2d 713.

Both parties agree that the controlling factor in the case at bar is to be the best interests of the children, Tracey and Ryan. The divorce decree provided for alternating custody subject to further revision when Tracey reached school age. Tracey has now begun school, and Ryan will soon enter school. It would appear that for the stability of the children's education and for their own best interests they should remain with one parent, either in Illinois or in Ohio, during the school year.

■■ Plaintiff contends that since both children are of tender years and one is a girl, and since plaintiff has not been shown to be unfit, she should be granted sole custody of her children. When a question of sole custody is before the court, our courts have shown preference for awarding custody of a child of tender years to the mother, particularly when the child is a girl. (*Nye*.) Nonetheless, the rule enunciated in *Nye* is not immutable or inflexible. (*Jenkins v. Jenkins* (1st Dist. 1967), 81 Ill. App. 2d 67, 225 N.E.2d 698.) The paramount consideration is the welfare and best interests of the children. (*Miezio*.) A reviewing court will not disturb the order of the trial court unless faced with an obvious abuse of discretion or faced with an order contrary to the manifest weight of the evidence. *Windhorn v. Windhorn* (3d Dist. 1970), 131 Ill. App. 2d 785, 790, 264 N.E.2d 531.

■■ Plaintiff in the instant case agreed to alternating custody between herself and defendant, and the agreement was incorporated into the original decree. Pursuant to that decree, the two children have been under the alternating custody of both parents. Evidence adduced at trial has shown both parties to be fit parents. Moreover, Milton J. Rosenthal, the guardian ad litem, observed the children's activities in plaintiff's and in defendant's home and found mutual signs of love and affection between the children and each of their parents. The only change in circumstances warranting any modification in the original decree occurred when the oldest child attained school age. The court below thus modified the original decree in accord with the best interests of the children when it

used the school year as a basis for custody division. We believe the numerous hearings did not adduce a sufficient change in circumstances so as to warrant an award of sole custody to either parent. Accordingly, we find the court to have acted within its discretion when it modified the periods of custody of the two minor children.

■■ Appellants contend that the court abused its discretion when it allegedly ignored the recommendations of its appointed guardian ad litem. When a court has notice that a minor is present without proper representation, it is the duty of that court to appoint a guardian ad litem to help safeguard and protect the interests and welfare of the minor. (*Layton v. Miller* (5th Dist. 1975), 25 Ill. App. 3d 834, 322 N.E.2d 484.) The guardian ad litem "should exercise that care and judgment that reasonable and prudent men exercise, and submit to the court, for its determination, all questions that may arise, and take its advice, and act under its discretion in the steps necessary to preserve and secure the rights of the minor defendants." *Stunz v. Stunz* (1890), 131 Ill. 210, 221, 23 N.E. 407, 409.

The guardian ad litem paid one announced visit to plaintiff's home and one announced visit to defendant's home. In each home he found mutual expressions of love and affection. However, the guardian ad litem expressed reservations to defendant about the then governess who was concurrently caring for her own two children. Subsequently defendant hired a new governess, and the guardian ad litem paid a second and unannounced visit to defendant's home on March 5, 1975. He decided to leave when defendant became upset over plaintiff's telephone call while the guardian ad litem was present in defendant's home. His third visit to defendant's home was also unannounced, and he found the home in disarray with only the governess and children present.

In closing argument the guardian ad litem told the court that both parents were well qualified to have custody of the children. Nonetheless, he recommended sole custody in plaintiff. He felt that one mother could better serve as a stable authority figure than different governesses.

The court made specific note of the evidence, recommendations and qualifications of the guardian ad litem and then modified the alternating custody of the children. The court found sole custody in neither parent. It is clear that the court below considered the recommendations of the guardian ad litem, and we believe the court acted within its discretion when it continued the basic provision of the original decree for alternating custody.

Defendant cross-appeals asserting that the court abused its discretion when it ordered defendant to pay allegedly excessive fees to the guardian ad litem. Specifically, he argues that the guardian ad litem became an advocate for plaintiff and thus failed to carry out his duties to the two minor children.

In Illinois, courts have recently begun to utilize the appointment of a guardian ad litem in contested custody disputes to assist the court in arriving at the child's best interests. (See 26 De Paul L. Rev. 241, 253 (1977).) The appointment of a guardian ad litem is not required in custody proceedings but is permitted by statute. Section 6 of "An Act to regulate the practice of courts in granting equitable relief" (Ill. Rev. Stat. 1975, ch. 22, par. 6) provides in pertinent part:

> "In any civil action it shall be lawful for the court in which the cause is pending to appoint a guardian ad litem, to any infant * * * in such cause, and to compel the person so appointed to act * * *. By such appointment, the person so appointed guardian ad litem * * * shall not be rendered liable to pay costs of suit; and he shall, moreover, be allowed a reasonable sum for his charges as such guardian * * * to be fixed by the court, and taxed in the bill of costs."

The award of fees to a guardian ad litem is within the sound judicial discretion of the trial judge, and a reviewing court will not find the allowance unreasonable absent a showing of abuse of that discretion. *Neurauter v. Reiner* (1st Dist. 1969), 117 Ill. App. 2d 141, 150, 254 N.E.2d 66, 71.

The court in the case at bar took note of the evidence presented by the guardian ad litem, Milton J. Rosenthal. It considered his recommendations but also noted that Rosenthal was an attorney appointed by the court to represent the interests of the two children. Rosenthal was not an expert on child custody matters. However, as an advocate for the two children, Rosenthal may well have found himself standing with the father at one time and with the mother at another time—at all times protecting the best interests of the children. Subsequent to the custody hearings Rosenthal presented his report to the court showing in detail the time spent on this matter.

■■ Defendant had petitioned the court to appoint the guardian ad litem at the outset of these lengthy custody proceedings. At the conclusion of the proceedings the court, in its discretion, assessed the fees of the guardian ad litem to defendant. It further noted this assessment when it denied plaintiff's petition for her attorney's fees. We conclude that the court did not abuse its discretion in awarding fees of $3500 to the guardian ad litem. Neither did it abuse its discretion when it ordered defendant to pay those fees.

■■ Plaintiff claims that the court below erred when it denied her petition for attorney's fees. Allowance of attorney's fees, however, in post-decree proceedings concerning the custody and maintenance of children is within the sound judicial discretion of the trial court and depends upon the particular circumstances of the individual case. (*Horwitz v. Horwitz* (1st Dist. 1970), 130 Ill. App. 2d 424, 264 N.E.2d

723.) The court looks to the relative financial position of the parties, and the party seeking attorney's fees must show financial inability to pay and the ability of the other spouse to do so. (*Kaufman v. Kaufman* (1st Dist. 1974), 22 Ill. App. 3d 1045, 1050, 318 N.E.2d 282, 286.) A further consideration is the identity of the party who precipitated the need for the current legal fees. *Horwitz*, at 427; *Moore v. Black* (3d Dist. 1956), 10 Ill. App. 2d 339, 134 N.E.2d 347.

The proceedings in the instant case began on October 18, 1974, when defendant filed a petition in Cook County, Illinois, seeking sole custody of the children and claiming that plaintiff had remarried, moved to the State of Ohio, and stated to defendant that she would not return the children. Plaintiff had married John Davies on October 7, 1974, and moved to his home in Toledo, Ohio. At the time of her marriage plaintiff had custody of the two minor children. According to the provisions of the original divorce decree of October 19, 1973, she was not required to return the children to defendant for a six-month period until November 1, 1974. However, the original divorce decree also provided: "That during the time that Robert has physical custody, and conversely during the time that Christine has custody, the non-custody party shall have reasonable rights of visitation and communications, consisting of but not by way of limitation, each week-end, commencing at 6:00 p.m. on Friday and terminating at 6:00 p.m. on Sunday." By moving to Ohio plaintiff had deprived defendant of one weekend of visitation prior to the filing of his petition. Defendant also feared further loss of visitation with the children, at least until November 1, 1974. In addition, he alleged that plaintiff told him she would not return the children.

■■ While defendant's assets and earning capabilities were shown to greatly exceed those of plaintiff, we believe that plaintiff by her actions precipitated the instant legal proceedings. An allowance of attorney's fees will not be granted where custodial modification is sought primarily for the convenience of the parties. (*Horwitz*, at 427.) The custodial modification in the instant case appears to have been sought primarily for the convenience of the parties rather than as a means of properly presenting the needs of the children to the court. Therefore, under the circumstances of this case we do not conclude that the court below abused its discretion in denying plaintiff's petition for attorney's fees.

For the foregoing reasons the orders of the circuit court of Cook County continuing alternating custody, awarding fees to the guardian ad litem and denying plaintiff's petition for attorney's fees are affirmed.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.